Titus, J.
The petitioner, William F. Gaffney, a clerk in the assessor’s office, applies for a peremptory writ of mandamus' compelling Philip Becker, as mayor of the city of Buffalo, to sign and approve two warrants drawn in favor of Gaffney, for his salary as such clerk, for the months of August'and September, 1888.
. The petitioner was appointed a clerk in the assessors office, without first having passed an examination by the civil service commissioners. No money can be drawn from the city treasury for any purpose, except upon a warrant authorized by the common council and signed by the mayor and city clerk, and countersigned by the comptroller. The warrants in favor of Gaffney were directed tq be drawn by the common council, and in accordance therewith were prepared and signed by the city clerk, and by him presented to the mayor for his signature. The mayor refused to sign the warrants, upon the ground that Gaffney was appointed a clerk without first having passed a civil service examination, and without being certified by the civil service commissioners, in violation of chapter 354, of the Laws of 1883, as amended by chapter 410 of the Laws of 1884. In the rules prescribed by the mayor for the admission of persons into the civil service of the city of Buffalo, the clerks in the assessors office are classed in Schedule B, and are required to pass a competitive examination before they can be legally appointed. Section 8 of the act above referred to provides that, “ no officer or-clerk shall be appointed * * * until he has passed an examination or is shown to be exempt from such examination. * * * Officers elected by the people and the subordinates of any such officer for whose error or violation of duty, such officer is financially responsible, and the heads of any departments of the city government, and persons employed in or who seek ,to enter the public service, under the educational departments of any city, and any subordinate who, by virtue of his office, has personal custody of public moneys or securities, for the safe keeping of which, the head of an office is under official bonds, shall not be subject to the regulations prescribed pursuant to this section.”
It is claimed by the petitioner, that the clerks in the assessor’s office fall within the provisions of the above section, ‘ ‘ officers elected by the people and the subordinates of any such officer, for whose errors or violation of duty such officer is financially responsible,” and hence it is claimed, the only qualification required is his appointment and performance of duties as such clerk.
*167 It is not claimed that the assessors would be financially responsible for the errors of their clerks unless the fact of the common council having passed an ordinance requiring the assessors to give bonds has made them so. Section 16, title 2,. of the city charter provides that, “ The comptroller, attorney, treasurer, engineer, street commissioner, superintendent of education, police justice, justice of the peace and overseers of the poor shall each execute and file with the city clerk a), bond or undertaking to the city with sureties in such sum as shall be fixed by ordinance, conditioned for the faithful performance of the duties of their respective-offices and for the accounting for and payment to the treasurer of all moneys belonging to the city received by them. * * * All other officers and persons appointed by virtue of this act may by ordinance be required to give a like bond or undertaking.”
The counsel for the petitioner urges that the last portion of the section above-quoted: “ All other officers and persons appointed by authority of this act may by ordinance be required to give a like bond or undertaking,” authorizes the common council to pass an ordinance requiring the assessors to give a bond, which would bring them within section 59 of title 2, which provides that-: “ The officer and his sureties shall be liable on his official bond for the conduct of the deputy and clerks appointed by him,” consequently such, clerks in the assessorss officer would come under the exception contained in section 8 of the act of 1883, first above-quoted.
I cannot agree with the learned counsel in his view of the law of this case. -By section 16 of the chapter those officers who are elected by the people and required to give bond's for the faithful performance of their duties, are particularly specified and not left in doubt. The assessors are not left out by mistake. Their duties are principally of a judicial character. They handle no money and have no control of any of the city property, except the books and papers in their office. They have no deputy, they can delegate no authority. They have no executive duty to perform and no possible reason can be urged why they should be required to give a bond, and I am satisfied, the legislature did not intend to require a bond to be given by them.
It is true the same section authorizes the common coun-' cil by ordinance to require, “ all other officers and persons appointed by authority of this act to give a bond,” but in view of the fact that the legislature, while requiring certain-specified officers to give bonds, did not include the assessors, is strong ground for belief that they were not intended to bé included among the officers required to give bonds. The charter itself does not speak of elected officers, but officers and persons appointed, and I do not think the court should attempt, in view of this explicit language, to put a con *168 'struction upon it which would tend to nullify to an extent at least, a wholesome act of the legislature. The civil service law was enacted for the benefit of the people, that our civil service might be both efficient and honest; that capable men might fill subordinate positions, and the right to hold such-positions would not alone depend upon the efficient political service of the applicant irrespective of his training and qualifications. This law should be fearlessly and honestly enforced so long as it remains on our statute books,' and public officials falling within its provisions should cheerfully obey it. The duties of the clerks in the assessors office are purely clerical, their acts have no public character or significance. They are not required by the charter to take an oath of office. Any qualified person can perform the duties of the clerk out of as well as in the office, and the assessors are not liable for their acts except as they ratify and make them their own.
I am, therefore, constrained to hold that the charter does not require the assessors to give bonds, nor does it authorize the common council to require them to give bonds so as to bring them within the provisions of the act exempting the clerks of that office from the rules of the civil service. It is a hardship to the persons employed not to be able to enforce payment of their salaries, and I sincerely sympathise with them. It would much better accord with my own feelings if I could so dispose of the case as to allow the motion to prevail to the end that the petitioner and those situated as he is could get the salary due them, but my duty is simply to declare what the law is as I understand it.
If these parties should pass a civil service examination, the city authorities, it seems to me, might properly pay for such services, inasmuch as the question is new under the law, and the officers making the appointment were undoubtedly honestly misled as to their duty.
The motion for a mandamus is denied, without costs.